IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MELISSA L. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | CV-09-451-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

MOSMAN, District Judge:

## **INTRODUCTION**

Plaintiff Melissa Martin brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g), and 1383©. I AFFIRM the Commissioner's decision.

## BACKGROUND

Martin was thirty-eight years old at the time of administrative hearing and has a high school education. Admin. R. 88, 144. She completed training as a certified nursing assistant. *Id.* at 144. Martin worked as a care giver, bar attendant, cashier, motel cleaner, receptionist, security guard, survey worker, and customer support analyst. *Id.* at 40-41. Martin alleges onset of disability from September 30, 2000, due to Graves' disease,[1] muscle pain, vision problems, depression, and irritable bowel syndrome (IBS). She filed for disability on February 10, 2006, and her application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on September 18, 2008. The ALJ determined Martin satisfied the insured status requirements for a claim under Title II through June 30, 2006. Martin must establish that she was disabled on or before that date to prevail on her DIB claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on December 3, 2008, finding Martin was not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), and 1382(a)(3)(A).

---

[1] Graves' disease is a disorder resulting in hyperthyroidism usually associated with an enlarged thyroid gland and abnormal protrusion of the eyeballs. Mosby's Medical, Nursing, and Allied Health Dictionary, 712, (5th ed. 1998). The thyroid is an endocrine gland. *Id.* at 560.

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ followed this sequential analysis and found at step one that Martin may have engaged in substantial gainful activity (SGA) since the alleged onset dat of June 30, 2000. Admin. R. 10. The ALJ noted Martin had earnings in 2005 and 2006 which demonstrated the ability to work in some capacity. *Id.* At step two the ALJ determined Martin had the medically determinable impairment of Graves' disease, but did not have an impairment or combination of impairments that was severe. *Id.,* 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416. 920 (a)(4)(ii) and (c). The ALJ found Martin's impairments did not significantly limit her ability to work and that she was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999). The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

Martin alleges the ALJ erred in his determination of whether she has a severe medical impairment.  She specifically challenges the ALJ's findings that her depression was not a severe impairment and her symptoms of Graves' disease were not severe.  Martin also alleges the ALJ failed to properly consider her obesity and IBS.  She further alleges the ALJ erred in his analysis of lay witness testimony and his credibility finding.  Martin also asserts employment records submitted to the Appeals Council demonstrate her inability to work due to serious health problems.

## I.    Medical Evidence

An impairment is severe if it significantly limits the claimant's ability to perform basic work activities.[2] 20 C.F.R.  §§ 404.1521, 416.921.  The burden to show a medically determinable severe impairment is on the claimant.  *Bowen v. Yuckert*, 482 U.S. at 146.  The ALJ reviewed the medical records and noted Martin had a diagnosis of Graves' disease and that in December, 1999, she reported to Dr.  Schafir that her left eye was bulging.  Admin. R. 12, 229.  Martin noted only subtle changes in her vision, with no pain or double vision.  Dr. Schafir ordered an MRI.  The MRI showed an enlarged left superior rectus muscle consistent with Graves' ophthalmopathy.  *Id.*  at 239.  The ALJ found Martin had Graves' disease, however, he found it was not severe.  Martin did not report any further problems with her eyes to her physicians.  Martin cites a medical record from 2006 as evidence that she continued to have eye problems.  However, this medical note concerns migraine headaches with nausea and difficulty focusing her eyes.  *Id.*  at 474.

---

[2]Basic work activities include "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.

The ALJ noted Martin reported muscle pains and stiffness in April, 2000, which improved with Prednisone. *Id.* at 12, 219. The ALJ discussed Martin's examinations by Dr. MacNeal in May, 2000, and Dr. Roast in September, 2000. *Id.* at 12, 211-213, 216-217. Dr. MacNeal noted Martin had multiple somatic complaints and a mildly depressed affect. *Id.* at 12, 217. Martin denied depression, but admitted to tension from multiple stressors. *Id.* at 216. Dr. Roast also noted multiple symptoms, and a history of Graves' disease. *Id.* at 12, 211. She further noted many of Martin's symptoms were improved with Celexa, but Martin had stopped taking it due to insurance issues. Dr. Roast provided three months of samples of Celexa and noted a contact for future prescription coverage. *Id.* at 212. The ALJ further noted that the medical record indicated Martin sought thyroid medications in May, 2004, after being off Levoxyl for a year or "for years." *Id.* at 12, 274. The ALJ further noted Dr. Khaki's examination in 2005, for diffuse myalgias and fatigue. *Id.* at 12, 298-299. Dr. Khaki noted a history of Graves' disease, status post radioactive iodine ablation, and ordered a muscle biopsy that resulted in negative findings. *Id.* at 294 328.

The ALJ also discussed the examinations and treatment notes by Drs. Mirtorabi, Radecki, and Devere. *Id.* at 12. Dr. Mirtorabi's records include the results of a referral to Dr. Suh in January, 2006, for evaluation of Martin's complaints of muscle pain and fatigue. Dr. Suh did not believe Martin's symptoms were the result of endocrine causes, which would include Graves' disease. *Id.* at 12, 328-329. Dr. Suh also noted Martin's thyroid replacement medication doses were fairly stable and noted an upcoming neurology appointment. *Id.* at 12, 327, 329. Dr. Radecki examined Martin in January, 2006. *Id.* at 331-332. He found no clinical findings suggestive of any particular condition and no electrodiagnostic evidence of neuropathy or myopathy. *Id.* at 12, 332. Dr.

Radecki also noted that although the symptoms suggested a muscle condition, her testing was normal and it was questionable why she had so much pain. *Id.*

Dr. Devere, a neurologist, examined Martin in February, 2006. *Id.* at 333-336. He noted her muscle biopsy showed only a slightly increased lipid content which did not correlate with her symptoms. *Id.* at 12, 334. Dr. Devere also noted testing was insignificant, no exercise intolerance except as related to pain, and that she was mildly overweight. *Id.* at 12, 333-334. The ALJ also noted that Dr. Devere noted Martin had depression several years ago. *Id.*

The ALJ discussed and discounted the 2008 opinion of Kelly Peterson, MS, that Martin has Dysthymic Disorder and Post-traumatic Stress Disorder. *Id.* at 13, 503. The ALJ correctly noted that Ms. Peterson is not a medical source able to diagnose a condition. 20 C.F.R. §§ 404.1513, 416.913. Although Martin correctly notes that this opinion evidence can help determine the severity of an impairment, Ms. Peterson's does not. The limited assessment plan from Ms. Peterson notes that Martin's mood, attention, memory, and judgment were within normal limits. *Id.* at 505. The assessment notes also state under the heading Intensity, "moderately affecting my life;" and under the heading Duration, "problem I've had on and off for years." *Id.* at 506. The ALJ also noted Martin reported recent situational difficulties because she was "kicked out" of her boyfriend's house and was staying with her parents. *Id.* at 13, 506.

The ALJ noted that although Martin reported she had struggled with depression for twelve years, she also stated it was on and off. He noted it was difficult to determine any duration or severity of Martin's episodes from Ms. Peterson's information. Martin asserts this statement indicates the ALJ should have proceeded to step three of the sequential analysis because he was unable to determine the extent of her impairment. However, as noted above, the ALJ cited the

medical evidence regarding Martin's past history of depression, presentations of mild depression, and episodes when she stopped taking her medications.  *Id.*  at 11-13.  As noted below, the ALJ also relied on the state agency psychologists to reach his determination that her impairments were not severe.

The ALJ discussed the evaluations by state agency consultants and their review of the record. *Id.*  at 12-13.  He noted that Dr. Lahman found Martin had a history of depression that was non-severe.  *Id.*  at 12, 384-395.  Dr. Lahman noted no functional limitations from her depression.  *Id.* Dr. Hennings, another state agency consultant, supported the finding of non-severe depression and noted the record indicated her depression was managed by medications. *Id.*  at 13, 398.  Dr. Kehrli, a state agency consultant, noted Martin's recent work history, history of Graves' disease stable on medications, the unexplained etiology of her symptoms, her daily activities, and concluded her physical condition was non-severe.  *Id.*  at 13, 383.  Dr. Westfall, another state agency consultant, reviewed the records in August, 2006 and affirmed Dr. Kehrli's opinion of a non-severe physical condition.  *Id.*  at 13, 399.

The ALJ stated he gave significant weight to the opinions of these state agency consultants. The Commissioner must consider the opinions of the medical and psychological consultants who make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose.  20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p.  These opinions constitute substantial evidence when consistent with other evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir.1989). Martin argues the state agency consultants based their opinions on lay analysts' versions of the

record, including her daily activities, which she asserts is inaccurate. She further asserts this information inadvertently alters the facts and is therefore not substantial evidence.

These medical opinions were signed by medical and psychological consultants. There is no conflicting medical opinion in the record. The ALJ noted Dr. Lahman found Martin managed her finances, read, watched T.V., got along with others, was able to follow instructions and had social activities. Admin. R. 12,13. The ALJ noted Dr. Kehrli found Martin was able to prepare meals, attend to household chores, shop, manage finances, and read. *Id.* at 13. Martin reported on social security questionnaires that she prepares meals; helps get her kids ready for school; does some cleaning and laundry; shops once a week; pays bills and handles checking and savings accounts; reads; watches T.V.; spends time with others talking on the phone; is able to follow written and oral instructions; and gets along with others. *Id.* at 159-166. Although Martin also noted difficulty in completing some household tasks without the assistance of her children and mother, the activities cited by the ALJ are consistent with her reports. It was proper for the ALJ to give significant weight to the opinions of the state agency consultants regarding the lack of severity of her physical and mental impairments.

## II.  Credibility Determination

Martin asserts the ALJ failed to give clear and convincing reasons for rejecting her testimony regarding the severity of her impairments. The ALJ must assess the credibility of the claimant regarding the severity of symptoms when the claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)(citations omitted). Martin has a medically determinable impairment which could produce some of her symptoms. When there is an underlying impairment

and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

In assessing credibility, the ALJ may consider objective medical evidence, the claimant's treatment history, including the failure to seek or follow a prescribed course of treatment, and ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d at 1284. As noted above, the ALJ found the medical record did not support Martin's allegations of a severe impairment. He noted her initial diagnosis of Graves' disease correlated with complaints of her left eye bulging, but no pain or changes in her eye except some blurring that was normal for her. Admin. R. at 12. Martin does not indicate any medical evidence that supports her claim of symptoms of ongoing severe eye problems. As the ALJ correctly noted, Martin did not present any medical evidence of irritable bowel syndrome or any etiology for her muscle pain. *Id.* at 14. Martin asserts her testimony on the severity of her pain is not inconsistent with the medical record just because the medical record fails to find a cause for her pain. She also notes that Graves' disease could cause her symptoms. However, as noted above, the ALJ cited her examining physicians' opinions that there was no medical cause they were able to find, including Graves' disease, that would account for her level of pain. *Id.* at 12, 328, 332, 334.

Martin alleges the ALJ did not specifically find her failure to remain on medications as a factor in determining credibility. However, the ALJ noted he must make a finding on the credibility of Martin's testimony regarding her limitations based on consideration of the entire record. *Id.* at

12.  He noted that in 2000, Martin had multiple complaint symptoms that were improved while on medication.  *Id.*  The ALJ further noted that in 2004 Martin requested to restart her thyroid medications because she had been off them for some time.  *Id.*  He also noted that Martin requested her medications be restarted again in 2008 after stopping them in 2007.  *Id.* at 13.  The ALJ noted Martin went off her medications in 2007 when her son joined the Marines, resulting in her experiencing symptoms.  *Id.*  Martin's failure to remain on medications that treated her symptoms is a relevant factor for the ALJ to consider in a credibility analysis.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations in determining credibility.  *Smolen v. Chater,* 80 F.3d at 1284-1285. The ALJ noted in his discussion of the state agency consultants' opinions Martin's ability to perform some normal activities of daily living, including shopping, preparing meals, performing some household chores, managing finances, reading, watching T.V., and talking on the phone with friends.  The ability to perform daily household chores may indicate an ability to work.  *Orteza v. Shalala*, 50 F.3d at 750.  However, a disability claimant does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d at 603.  Nevertheless, if the claimant's level and type of activity is inconsistent with her claimed limitations, her activities do have a bearing on credibility.  *Id.*

The ALJ not only noted these daily activities but the fact that Martin worked at or close to the SGA level in 2005 and worked some in 2006.  Admin. R. 10,14.  He further noted there were no differences in Martin's alleged limitations during that time.  A claimant's work history may be

considered as a factor in evaluating credibility.  *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir.

2002).

The ALJ's duty is to assess credibility and he did so based on substantial evidence in the

record.  The ALJ noted the severity of Martin's alleged symptoms were not corroborated by medical

evidence; that she went off the medications which treated her symptoms more than once during the

disability period; that she engaged in many activities of daily living; and that she engaged in

significant work activities.  The ALJ provided clear and convincing reasons for finding Martin's

testimony regarding the severity of her limitations not credible.

## III.  Lay Witness Testimony

Martin asserts the ALJ improperly rejected the testimony of her mother, Connie Ainslie,

regarding the severity of her impairment.  Friends and family members in a position to observe a

claimant's symptoms and daily activities are competent to testify as to the claimant's condition.

*Dodrill v. Shalala*, 12 F.3d at 918-919.  Such testimony cannot be disregarded without comment.

*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir 1996).  The ALJ can disregard the testimony of a lay

witness by providing a germane reason for doing so.  *Valentine v. Commissioner of Soc. Sec. Admin.*,

574 F. 3d. 685, 690 (9th Cir. 2009).  A germane reason for disregarding lay witness testimony is that

is inconsistent with the medical record.  *Bayliss v. Barnhart,* 427 F.3d 1211,1218 (9th Cir. 2005).

The ALJ found Ms. Ainslie's testimony to be inconsistent with the medical and other records.

Admin. R. 14.  He noted Ms.  Ainslie stated Martin was in a lot of pain; could only walk fifty feet

before needing to rest a few minutes; and attempted housework after lying down.  *Id.*  The medical

record does not support the testimony regarding walking limitations, pain limitations, or the need

to rest.  The ALJ gave a germane reason for discounting Ms. Ainslie's testimony regarding these limitations.  Her other testimony is not inconsistent with the ALJ' finding.

## IV.  Obesity

Martin alleges that the ALJ erred in not considering her obesity.  She did not allege obesity as a disabling condition or raise it at the administrative hearing.  There is no diagnosis or mention of obesity in the medical records.  In fact, Dr. Devere noted in February, 2006, that Martin was "mildly overweight." *Id.* at 334.  Martin asserts she weighed 200 pounds at this time.  She further asserts that using the National Institutes of Health Body Mass Index (BMI) her weight at that time and earlier meets the Level I weight level for obesity.  The ALJ noted that Martin stated she lost a lot of weight due to Graves' disease and then gained a lot of weight which resulted in some joint pain. *Id.* at 11.  As noted above, the ALJ discounted some of her pain testimony.

Martin cites SSR 02-1p for the proposition that the Social Security Administration (SSA) will use its judgment to establish the presence of obesity based on the medical findings and other evidence in the record, even if a treating physician fails to diagnose obesity.  SSR 02-1p notes that the SSA generally relies on the diagnosis of obesity by a treating source or consultative examiner, but will generally not purchase a consultative examination just to establish obesity.  SSR 02-1p 3., 4., *available at*  2000 WL 628049.  "In addition, although there is often a significant correlation between BMI and excess body fat, this is not always the case." *Id.* at 1.  Obesity alone, or in combination with other impairments, must significantly limit an individual's ability to do basic work activities in order to be a severe impairment. *Id.* at 6.  Even assuming Martin is obese, she has not posited any functional limitations caused by obesity or why it significantly limits her ability to do basic work activities.  She has failed to show that she has a severe impairment due to obesity

### V.  Employment Records

Martin asserts that records provided to the Appeals Council from her former employer regarding medical leave under the Family Medical Leave Act (FMLA) demonstrate that she has a severe medical impairment.  Admin. R. 513-523.  The records include medical statements from Drs. Mirtorabi and Khaki from 2005.  Dr.  Mirtorabi states Martin's condition began on September 23, 2005.  *Id.*  at 517.  He further noted that Martin was able to perform work.  *Id.*  at 518.  There is also a note from Dr. Mirtorabi dated November 2, 2005, stating Martin needed to get up or have a break every two hours, which is not inconsistent with work.  *Id.*  at 521.  Dr.  Khaki stated Martin had muscle pain and was waiting for test results.  *Id.*  at 513.

Martin testified that she was unable to keep up in her work in 2005 and 2006 due to frequent bathroom breaks caused by her IBS.  *Id.*  at 26-29.  She does not state that she is on any medication for this condition, but instead will frequently simply not eat.  *Id.*  As noted by the ALJ there is no medical evidence of IBS during this time period in the medical records.  Martin cites a 2008 medical note establishing care at Virginia Garcia Memorial Health Center.  *Id.*  at 471.  The notes state Martin is experiencing an increase in symptoms of IBS occurring four times a day.  *Id.*  She is prescribed medication for these symptoms.  *Id.*  There is no evidence that the medication did not work or that she sought further treatment.  The employment records do no mention IBS as a medical reason for using the FMLA.  Using the FMLA by itself does not establish that Martin has an impairment that is severe.  The Appeals Council found these employment records insufficient to alter the decision of the ALJ.  *Id.*  at 1-4.  I agree.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision that Martin was not disabled under the

Social Security Act is based on correct legal standards and supported by substantial evidence.

## **ORDER**

The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

DATED this __30th__ day of July, 2010.

/s/ Michael W. Mosman_____
Michael W. Mosman
United States District Judge